1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF WYOMING

3    _____

4    UNITED STATES OF AMERICA,          DOCKET NO. 21-CR-010-F

5          Plaintiff,

6          vs.

7    ANTHONY JEFFREY BROCHU,            Cheyenne, Wyoming
                                        March 16, 2021
8          Defendant.                   8:51 a.m.

9

10   _____

          TRANSCRIPT OF CHANGE OF PLEA PROCEEDINGS
11
        BEFORE THE HONORABLE NANCY D. FREUDENTHAL
12               UNITED STATES DISTRICT JUDGE

13   APPEARANCES BY ZOOM:

14   For the Plaintiff:      JONATHAN C. COPPOM
                             Assistant United States Attorney
15                           District of Wyoming
                             2120 Capitol Avenue, Fourth Floor
16                           Cheyenne, WY  82001

17   For the Defendant:      JORDAN DECKENBACH
                             Office of the Federal Public Defender
18                           District of Wyoming
                             111 South Wolcott Street
19                           Casper, WY 82601

20

21

              JANET DAVIS, RDR, FCRR, CRR
22            Federal Official Court Reporter
       2120 Capitol Avenue, Room 2226, Cheyenne, WY  82001
23         307.314.2356 * jbd.davis@gmail.com

24

     Proceedings reported by stenotype reporter; transcript produced
25   with Computer-Aided Transcription.

Docket 21-CR-010-F                                                    2

1        (Proceedings commenced 8:51 a.m., March 16, 2021.)

2        COURTROOM DEPUTY:  In criminal matter

3   Case No. 21-CR-10-1-F, United States of America versus Jeffrey

4   Anthony Brochu, set today for a change of plea hearing.  The

5   public access line is open.

6        Counsel, please state your appearances.

7        MR. COPPOM:  Good morning, Your Honor.  Jonathan

8   Coppom for the United States.

9        MR. DECKENBACH:  And good morning, Your Honor.  Jordan

10  Deckenbach appearing on behalf of Mr. Jeffrey Anthony Brochu

11  who appears by video from Scotts Bluff in Nebraska.

12       THE COURT:  Good morning.  Counsel, what's the status

13  of your client's written waiver to his right to appear

14  personally?

15       MR. DECKENBACH:  Yesterday, Your Honor, I reviewed

16  that waiver with Mr. Brochu.  I understand he has signed it and

17  given it back to the Scotts Bluff staff.  I'm unsure of why

18  that has not been returned to your chambers.  It was my

19  impression that they were going to execute that late in the day

20  yesterday.

21       COURTROOM DEPUTY:  And, Judge, I just got it from them

22  this morning, so I will forward that to you.

23       THE COURT:  All right.  I would ask the courtroom

24  deputy to please swear in the defendant.

25       (Defendant sworn.)

Docket 21-CR-010-F                                                    3

1          THE COURT:  Having been sworn, do you understand that

2     you must respond to my questions truthfully under penalty of

3     perjury?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Please state your full name.

6          THE DEFENDANT:  Anthony Jeffrey Brochu.

7          THE COURT:  And where were you born?

8          THE DEFENDANT:  In Cody, Wyoming.

9          THE COURT:  How far did you go in school?

10         THE DEFENDANT:  Grade 13, Your Honor.

11         THE COURT:  Do you have your GED?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Have you been treated recently for any

14    drug addiction or mental illness?

15         THE DEFENDANT:  Anxiety, Your Honor.

16         THE COURT:  All right.  And is that recent treatment?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  All right.  Are you currently under the

19    influence of any drug or alcohol, prescribed or otherwise?

20         THE DEFENDANT:  None that would impair my judgment,

21    Your Honor.

22         THE COURT:  All right.  I will proceed with going

23    through the on-the-record waiver of your right to be physically

24    present and obtain your consent to appear by videoconference.

25    I understand from your attorney's representations that he's

Docket 21-CR-010-F                                                    4

1    discussed this with you and you signed the waiver, and it now

2    is in our possession.

3          But I'll also talk to you to make sure that you're

4    fully advised of your rights.  This is no reflection on your

5    attorney, certainly.  It is just a on-the-record confirmation

6    of the advisement.  And I will obtain an oral waiver for

7    proceeding forward by videoconference rather than by personal

8    appearance.

9          Abby covered this earlier, but I just want to confirm

10   that you can see me, your attorney and the attorney for the

11   Government as well as a small picture of yourself -- or however

12   it shows, might be on gallery view.

13          Can you see all of those individuals?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  And were you able to hear everyone when

16   they spoke up and announced their appearances?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  If anything happens during the course of

19   the proceeding today, I will stop the proceeding.  My Internet

20   is a bit unstable, given where I live.  Let's hope for the

21   best.  But we won't go on without everybody involved present

22   and being able to hear and see.

23          If you need to talk to your attorney at any time, just

24   let me know.  He can do as well.  Abby can send an invitation

25   to you where you need to click a link so you can go to a room,

1  a breakout room within the Zoom platform, which is designed to

2  allow you and your attorney to have a confidential

3  conversation.  So you just need to let me know, or he needs

4  to -- Mr. Deckenbach, your attorney, needs to let you know that

5  you'd like to go to that breakout room.

6          If you need anything repeated, let me know.  We will

7  be making sure that everyone speaks up and avoids speaking over

8  each other because my court reporter, Ms. Jan Davis -- and you

9  should see a phone icon for her -- is on -- is present and

10 listening to the proceedings so that she can take this down and

11 ultimately will have a transcript of the plea proceeding.

12         There is no capturing of the video itself.  All that

13 we will have of the record of the proceeding is the court

14 transcript.

15         Do you understand all of that?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Okay.  Let's talk about your rights.  You

18 do have the right to be here in Cheyenne in the courtroom

19 physically present.  However, you can waive that right under

20 certain circumstances, and I can accept that waiver.  The

21 circumstances require that I make an on-the-record --

22 on-the-record record of the reasons why you're not here

23 physically present.

24         Today is March 16th, 2021.  Our country, along with

25 the entire globe, is still in the midst of a global pandemic

1    caused by the coronavirus and now aggravated by the variants

2    associated with the coronavirus.

3           The President of the United States and the Governor of

4    the State of Wyoming have each declared states of emergency.

5    Congress has passed an emergency statute which allows criminal

6    proceedings such as this to go forward by videoconference under

7    certain circumstances.

8           Our normal procedure would be to transport you to

9    Cheyenne for court for any plea proceeding so that you can be

10   here physically present along with family supporters and any

11   members of the public.

12          But we are doing the best we can under these difficult

13   circumstances, both with the coronavirus and now with this

14   record-setting winter storm, to protect the health and safety

15   of everyone involved in plea proceedings, including court

16   staff, transport personnel, you, certainly, security personnel,

17   myself, to conduct business without unnecessary delays.

18          However, the physical appearance of defendants in a

19   courthouse where it is difficult to socially distance and still

20   have appropriate conversations with those that we need to speak

21   to creates health risks.  They create health risks for you and

22   your attorney, most significantly, but they also create health

23   risks for everyone else within that confined space.

24          Because of those health risks, we are allowing people

25   who wish to go forward by video teleconference the option to do

1    so.  But that option is completely voluntary.  It is up to you

2    to waive your right to be physically present.

3           Your right to be physically present in court -- in

4    court also brings with it the right to have members of the

5    public, which would include, in some circumstances, family

6    members, friends and supporters, employers, and the like to be

7    there with you.

8           To the extent that your rights to have those members

9    of the public physically present is in any way impaired, I will

10   ask you to waive that right.  Abby did announce this morning

11   that the public access line is open, so people have access to

12   listen to the proceedings, but that's not the same as being

13   physically present in the courtroom.  And some defendants want

14   that physical presence and believe that the phone line impairs

15   their right to have supporters there physically present.

16   That's why I get a waiver of that right as well.

17          You understand that you have the right to be

18   physically present in court and that if you wish to pursue or

19   advance that right, we will continue this proceeding so that

20   with weather and other circumstances, we can ultimately get you

21   to court?  Do you understand that?

22          THE DEFENDANT:  Yes, I do.

23          THE COURT:  And do you understand that you have a

24   right to consult with your attorney during the course of these

25   proceedings?

1          And I have explained the link that you have to accept

2     to go into a breakout room for those conversations.  Do you

3     understand that?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  And do you understand that you have the

6     right to hear and see everything during the course of these

7     proceedings, but, again, we're doing that through technology,

8     the videoconference platform of Zoom?  Do you understand that?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  And do you understand that family, friends

11    and other supporters can call in, but they cannot otherwise

12    join this proceeding, either by way of being physically

13    present, going forward by way of videoconference or joining by

14    teleconference?  Do you understand that?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  And you will speak to me, as you are now,

17    through videoconference.  We will be moving to the plea

18    proceeding if you consent and waive your right to be physically

19    present, but, again, our discussions will be through this

20    technological platform of Zoom.

21          Do you understand?

22          THE DEFENDANT:  For today's hearing, Yes, Your Honor.

23          THE COURT:  Yes, for today's hearing.

24          So you understand I -- I think I spoke over you.

25          THE DEFENDANT:  Yes, I understand, Your Honor.

1      THE COURT:  And have you consulted with your lawyer

2  concerning waiving your right to be physically present?

3      THE DEFENDANT:  Yes, Your Honor.

4      THE COURT:  Do you agree that to the extent your right

5  to have the public present is in any way impaired, that you

6  waive that right?

7      THE DEFENDANT:  Yes, I agree, Your Honor.

8      THE COURT:  Is there any reason why I should not

9  accept the defendant's waiver and consent to proceed by video

10  teleconference?

11      THE DEFENDANT:  No.

12      THE COURT:  For defendant, Counsel?

13      MR. DECKENBACH:  No, Your Honor.  Thank you.

14      THE COURT:  For the Government, any concerns?

15      MR. COPPOM:  No, Your Honor.

16      THE COURT:  Mr. Coppom.

17      MR. COPPOM:  Sorry, Your Honor.  Looks like maybe my

18  Internet cut out for a second.

19      No, Your Honor, the government has no objection to

20  proceeding by video today.

21      THE COURT:  All right.  For the following reasons --

22  and let me say, if you have trouble hearing me because I do get

23  the message that my Internet is unstable, wave your hand

24  because I may not be able to hear you.  It could freeze up on

25  us, but we will do what we can to proceed, absent things really

1    impairing our ability to communicate.

2         So for the following reasons, I find the plea

3    proceeding in this case cannot be further delayed without

4    serious harms to the interests of justice and should be

5    conducted by video teleconference.

6         Those reasons include the coronavirus and the variants

7    which create a health risk to the participants in the plea

8    proceeding, along with security and transport personnel.  We

9    have not achieved sufficient vaccination of inmates in our

10   facilities, let alone the public in general, attorneys, court

11   staff, to achieve any sort of herd immunity -- using that

12   phrase -- to afford protection through vaccination.

13        We also are in the midst of a record snowfall event

14   which has affected transportation to and from Scotts Bluff as

15   well as transportation within the city of Cheyenne.

16        The defendant does have a right to a timely

17   disposition.  He has filed a plea agreement which tolls his

18   Speedy Trial rights, but, nonetheless, his right to have the

19   course of these proceedings move forward without unreasonable

20   delay is a right that the Court respects and the public

21   interest has a right to have the proceedings go forward where

22   there is a knowing and voluntary consent to proceed consistent

23   with the statute Congress has enacted.

24        Does defense counsel object or have supplementary

25   reasons as to the reasons I've given to proceed by

1  videoconference?

2          MR. DECKENBACH:  No objection, Your Honor, and nothing

3  to add to the record.

4          THE COURT:  What about the Government?

5          MR. COPPOM:  Nothing to add, Your Honor.

6          THE COURT:  Mr. Brochu, do you have any objections or

7  supplemental reasons to those I've given?

8          THE DEFENDANT:  No objection, Your Honor.

9          THE COURT:  All right.  I further find that the

10  defendant has knowingly and voluntarily waived his right to

11  appear physically and has knowingly and voluntarily consented

12  to appear by video teleconference.

13          I further find that the measures taken to provide for

14  public access to this proceeding are reasonable under the

15  circumstances and that to the extent the defendant's right to

16  public access is in any way impaired, he's knowingly and

17  voluntarily waived that right.

18          I accept the waiver and look forward to having his

19  written waiver docketed in the docket for this case and will

20  now proceed directly to the plea proceeding.

21          At this time I would ask the courtroom deputy to

22  please mute the public access line.

23          THE COURTROOM DEPUTY:  Okay, Judge, you can go.  Thank

24  you.

25          THE COURT:  All right.

1          Back to you, Mr. Brochu.  Have you received a copy of

2   the indictment which includes one count, the felon in

3   possession count?

4          THE DEFENDANT:  Yes, I have, Your Honor.

5          THE COURT:  And have you had an opportunity to read

6   and discuss that charge with your attorney?

7          THE DEFENDANT:  Yes, I have, Your Honor.

8          THE COURT:  And are you fully satisfied with the

9   advice and representation you've received to date from your

10  attorney?

11         THE DEFENDANT:  Yes, I am, Your Honor.

12         THE COURT:  All right.  I have a copy of a plea

13  agreement.

14         Did you read and discuss the plea agreement with your

15  attorney before you signed it?

16         THE DEFENDANT:  Yes, I have, Your Honor.

17         THE COURT:  And do you understand the terms of the

18  plea agreement?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  Does the plea agreement in its entirety

21  represent all the -- or include all the promises and

22  understandings that you have with the Government?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  Has anyone made any promise or

25  representation to you concerning this case or how it may

1  ultimately resolve which is not written down in the plea

2  agreement?

3          THE DEFENDANT:  No, Your Honor.

4          THE COURT:  Has anyone threatened you or threatened

5  anyone you care about in order to get you to sign the plea

6  agreement?

7          THE DEFENDANT:  No, Your Honor.

8          THE COURT:  Now, the plea agreement, to the extent it

9  contains promises or recommendations, particularly those from

10  the Government, they are not binding on me.  Let's use as an

11  example the Government's promise to recommend a sentence at the

12  low end of the guideline range.  That's a promise you have from

13  the Government.  It doesn't bind me.  I certainly listen to all

14  recommendations, including joint recommendations from the

15  parties concerning disposition, and I have to have a reasoned

16  basis for any sentence that I impose, so I will explain why I

17  might not accept the recommendations.

18          And I bring this up somewhat as a worst-case scenario.

19  It doesn't mean that there's anything that I know about this

20  case or any strong feelings I have.  This is our first time

21  meeting.  And it is by way of videoconference, but I always

22  talk about this worst-case scenario to impress upon you that

23  the sentence that I impose may be a surprise to you compared to

24  what is written down in the plea agreement.

25          Simply because a sentence seems overly harsh, even if

1   it doesn't at all relate to what the plea agreement states,

2   that doesn't give you a reason to change your mind and return

3   to a plea of guilty -- or a plea of not guilty -- excuse me --

4   if I have accepted your plea of guilty as a knowing and

5   voluntary plea.

6           Do you understand that?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  Mr. Deckenbach, is there any reason -- or

9   were all formal plea offers from the Government communicated to

10  your client?

11          MR. DECKENBACH:  They were, Your Honor.

12          THE COURT:  All right.  Back to you, Mr. Brochu.

13          Let me talk about the consequences of pleading guilty

14  to this felony count of felon in possession of a firearm.  I

15  know from the nature of the charge that this is not your first

16  felony, but, nonetheless, let me cover all of the consequences

17  of being adjudged a felon.

18          Being adjudged a felon has consequences apart from any

19  sentence you may receive on the charge.  It deprives you of the

20  right to own or possess firearms or ammunition.  You can't

21  vote, serve on a jury or serve on a grand jury.  You can't run

22  for public office.

23          In some occasions being adjudged a felon affects where

24  you can live, work or who you may be able to associate with.

25          Had you not been born outside -- had you not been born

1   here in the United States, it might affect whether you could

2   remain here lawfully versus being deported to your country of

3   birth.

4           I know you were born in Cody, as was I, but do you

5   understand these consequences of being adjudged a felon?

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  Let me also talk to you about the

8   consequences that can occur at sentencing.  The first

9   consequence is time in custody.  The statute provides for a

10  range for time in custody for this charge.  That range runs

11  from zero, basically a probationary sentence, to as long as ten

12  years.

13          Do you understand that you may serve time in custody

14  associated with this offense?

15          THE DEFENDANT:  Yes, I do, Your Honor.

16          THE COURT:  There's also the possibility of a fine.

17  Fines are based on ability to pay.  So based on your ability to

18  pay, after an investigation into your financial circumstances,

19  I'll make a decision at sentencing about whether a fine is

20  appropriate.  The fine range is from zero, no fine for people

21  who can't afford to pay a fine, to as much as $250,000.  These

22  high fine ranges have never been imposed by me, but they are

23  authorized under the statute.  Again, it is all driven on

24  ability to pay.

25          Do you understand that?

1        THE DEFENDANT:  Yes, Your Honor.

2        THE COURT:  There's also the term of supervised

3  release.  We call it supervised release because most people who

4  appear in federal court end up going into custody.  That's just

5  the nature of serious federal felonies that are charged in our

6  district.

7        Consequently, when they're released from custody, they

8  go into supervision.  Some people call it probation because of

9  the probation officer who supervises you, but here in the

10 federal system we refer to it as supervised release.

11       There will be a term of supervision of three years,

12 and during that three-year term, you will have to comply with

13 the conditions of supervision.  I will impose those conditions

14 at sentencing.

15       Typical conditions, though, include reporting to your

16 probation officer, being gainfully employed or going back to

17 school.  Depending upon your circumstances, there may be

18 conditions associated with drug testing if there's a history of

19 drug use or abuse.  There could be mental health treatment and

20 requirement to take prescription drugs if the offense conduct

21 seems to relate to mental health issues or if we believe that

22 that would benefit you through the course of supervision.

23       We're not here to decide all the conditions which can

24 be imposed.  There are mandatory conditions and standard

25 conditions and special conditions.  Suffice it to say, we will

1   be talking about those at sentencing, and if you have a

2   concern, you can certainly raise those to me.

3          Once I impose the conditions of supervision, they're

4   imposed by court order, so you must comply.  Failure to comply

5   can result in your probation officer writing you up, entering

6   some interim sanctions.  The more severe violations are brought

7   to me, and they can result in your arrest and having to serve

8   additional time in custody.

9          You understand supervised release, the terms and the

10  conditions that can be imposed and the consequences of

11  complying and not complying with the conditions?

12         THE DEFENDANT:  And that is a term of three years,

13  correct, Your Honor?

14         THE COURT:  Yes.  So for three years -- and sometimes

15  people get off of supervision early.  If they do well, they can

16  write to me.  We will investigate whether they're a good

17  candidate for release.  Sometimes people's jobs and the success

18  on supervision suggests an early release is appropriate.

19         But in general, the order will issue on three years,

20  subject to modification.

21         THE DEFENDANT:  Yes, I understand, Your Honor.

22         THE COURT:  All right.  And there's also a $100

23  special assessment that's due at sentencing.  Most people pay

24  their obligations over time, sometimes into their term of

25  supervised release.

1           Do you understand that $100 special assessment?

2           THE DEFENDANT:  Yes, Your Honor.

3           THE COURT:  Any questions about these consequences

4   of -- which are imposed at sentencing, the actual sanctions,

5   time in custody, possible fine, supervision and the special

6   assessment?

7           THE DEFENDANT:  No questions, Your Honor.

8           THE COURT:  All right.  Have you and your attorney

9   talked about the federal Advisory Sentencing Guidelines and how

10  they might apply to you in this case?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Good.  We're all helped out by the

13  Government's preliminary guideline calculation that they've

14  made and filed so that it gives people a sense of how you might

15  guideline, so there's, hopefully, no big surprises.

16          However, even though the prosecutor has penciled that

17  out, I don't know enough about you, your past criminal history,

18  whether some history might result in aggravating your offense

19  level.  I don't know enough about this case to make any

20  representations to you at this time as to where you might fall

21  in the guideline system.

22          Firearm cases are very complicated.  Even though

23  they're -- they can be relatively straightforward in terms of

24  the elements of the offense, they can be quite complicated in

25  guideline calculations.  There can be past offense conduct that

1    makes things more challenging and difficult to -- to arrive at

2    a preliminary guideline calculation.

3           What I can tell you is that I will sort out those

4    guideline issues before sentencing, and I will announce the

5    guidelines at sentencing.  I am required by law to correctly

6    calculate the guidelines, and I'm required then to consider --

7    I'm required to consider them at sentencing as reasonable

8    disposition for offenses like this and offenders with whatever

9    your criminal history calculates, however I can depart or vary

10   from the guidelines.

11          My goal is to arrive at a sentence, sufficient, but

12   not greater than necessary, considering all of the sentencing

13   factors for punishment for this offense.  So my objective is to

14   sentence sufficiently, but not be overly punitive, not be

15   greater than necessary.

16          Do you understand that I cannot advise you about the

17   guidelines at this time?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  And, again, let me hit on this worst-case

20   scenario.  The guideline calculations may surprise the

21   prosecutor and me and you.  It could result in a sentencing

22   range or a sentence that seems overly harsh or wrong to you.

23          You have remedies, but if you plead guilty today and I

24   accept your plea of guilty, you can't turn back the clock to

25   return to a not guilty plea.

1          Do you understand that?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Now, this plea agreement that you have

4   signed is an agreement to make -- enter a plea of guilty on a

5   conditional basis.  Your attorney on your behalf filed a motion

6   to dismiss which may have merit.  I have decided that, but it

7   could be viewed differently on appeal.  If the appellate court

8   decides that I erred in my decision, that can allow you to kind

9   of go back and have a do-over, including perhaps even requiring

10  the Government to dismiss the indictment against you.

11         So any guilty plea you enter today will only be

12  conditional, affording you the chance to charge that I erred in

13  the decision on the motion to dismiss.

14         You also have other appeal rights.  You can complain

15  about the sentence that I issue or the terms of supervised

16  release or the monetary obligations or whatever.  It is

17  important that you know, though, that your attorney will have

18  to file a timely Notice of Appeal.

19         So at sentencing, please let him know -- I'm assuming

20  he already appreciates that you want to challenge the decision

21  that is associated with the conditional plea agreement that you

22  have entered.  But there may be other things that you will want

23  to get on the table for challenge, and so let him know what you

24  want to contest in the appeal.  Your appeal rights to the Tenth

25  Circuit is the best place to have your arguments all on the

1    table and have the Tenth Circuit take a look at any and all of

2    the decisions I've made.  Again, it is only 14 days from the

3    date of entry of judgment, so he needs direction from you.

4           Do you understand that?

5           THE DEFENDANT:  Yes, Your Honor.

6           THE COURT:  Also, in the federal system, if I sentence

7    you to time in custody, that time runs essentially day for day

8    with no early release through parole.  The -- there is no

9    early -- there is no parole in the federal system.  You might

10   be released early through earning good-time credit or be

11   released into a halfway house to serve the rest of your

12   sentence and be brought better into society, have a job and

13   earn some money before you just hit the streets, but that's not

14   being paroled early like you might know in the state system.

15          Do you understand that?

16          THE DEFENDANT:  Yes, I understand.

17          THE COURT:  Let me -- before I ask you how you plead,

18   I want to advise you of your trial rights because these rights

19   are lost to you if you help the Government in its case by

20   pleading guilty to the charge.

21          You have the right to put the Government to its burden

22   of proof through the jury trial process.  That includes

23   everything from jury selection through the return of verdict.

24   Your jury trial rights include the right to plead not guilty

25   and persist in that plea, even though you have signed the plea

1    agreement.

2            If you pursue the case to trial, the jury will be

3    instructed that you are presumed innocent simply because of

4    your plea of not guilty, and the burden of proof rests entirely

5    on the shoulders of the Government.  The jury is fully

6    instructed on the presumption of that -- of your innocence.

7    The presumption of innocence alone is enough to acquit you of

8    the charge.

9            The Government's burden of proof is a very high burden

10   of proof.  It's proof beyond a reasonable doubt, the highest

11   burden in our justice system.  That isn't proof beyond all

12   doubt, but the evidence the Government gets admitted through

13   the course of trial must firmly convince the jury of your guilt

14   before they can return a verdict of guilty.

15           You have the right to remain silent during the course

16   of trial, and the jury will be instructed they cannot infer or

17   conclude anything simply because you don't take the witness

18   stand to tell your side of the story.  You are under no

19   obligation to tell your side of the story because you have no

20   burden of proof on your shoulders.  It is always on the

21   shoulders of the Government.

22           Your attorney will be there through jury selection and

23   before then in pretrial matters and all the way through the

24   course of trial and through the return of verdict and after

25   that.  He's your spokesperson and advocate in court.  He, along

1    with you, helps select the jury to make sure we have a fair and

2    impartial group of 12 jurors, plus an alternate, to decide the

3    facts of the case.  He can confront and cross-examine witnesses

4    called by the Government and object to evidence, whether

5    testimony or otherwise, that he believes violates the Federal

6    Rules of Evidence.  That's his advocacy role.  He can make an

7    opening statement to the jury on your behalf and make closing

8    arguments to the jury.  Again, in every respect you can rely

9    upon him to speak for you and to be your effective advocate

10   through trial.

11          You have the right to a unanimous verdict, so that

12   essentially means that every juror must decide the case for

13   himself or herself.  A juror cannot surrender an honestly held

14   opinion of the facts simply to return a verdict of guilty.

15   They must deliberate together with an eye towards reaching a

16   unanimous verdict, but if, on fair deliberation, they cannot,

17   importantly, they can't return a verdict of guilty.

18          Do you understand that entering a plea of guilty wipes

19   out these trial rights?  There won't be any jury called.  There

20   won't be a jury trial.  The jury won't decide the facts or

21   return any verdict in the case.

22          Do you understand that?

23          THE DEFENDANT:  Yes, I do, Your Honor.

24          THE COURT:  Now, the jury on instruction is required

25   to hold the Government to its burden of proof beyond a

1   reasonable doubt to every offense charged.  Even though the

2   name is felon in possession of a firearm, the Government is

3   held to the burden of proof to prove everything they have

4   accused you of in the indictment.  Let's talk through those

5   elements, because I need to hear those elements myself today.

6   There's no jury present, but I still have to decide that the

7   elements are satisfied on a factual basis; in other words, that

8   the facts support the guilty plea.  That protects the public

9   because I can't accept a plea of guilty from someone who is

10   not, in fact, guilty of the charge.

11          The indictment includes a time frame.  The Government

12   states in the indictment that the offense conduct occurred on

13   or about October 29th of last year here in the District of

14   Wyoming.  That gives the District Court of Wyoming jurisdiction

15   over the case.

16          The next element is you and what you did and your

17   state of mind, that you knowingly possessed a firearm.

18          The next element deals with your status and your

19   knowledge of that status, that at the time you knowingly

20   possessed a firearm, you had been convicted of a felony.  So

21   that's your status.  That's what makes this a status crime --

22   namely, a pistol bearing serial number T0620-15D00541 -- so a

23   particular serial number connected with this pistol, and that a

24   felony is a crime punishable by imprisonment for a term

25   exceeding one year, and that that conviction occurred before

1    your knowing possession of this pistol.

2         And, secondly, that you knew at the time you possessed

3    the pistol that you had been convicted of a felony.

4         And the last element deals with the nature of the

5    firearm which allows Congress to federalize this offense, that

6    the firearm at some time prior to its coming into your

7    possession moved through and affected interstate commerce.

8    Sometimes defendants have no idea about the interstate commerce

9    side of the firearm, basically the status of the firearm.  And

10   we can turn to the Government on that.  But as to the other

11   elements, the factual basis is typically laid by the defendant,

12   sometimes with questions from counsel.

13        So, Counsel, how do you wish to proceed with the

14   factual basis?

15        MR. DECKENBACH:  Thank you, Your Honor.  If I could

16   inquire of my client as to the facts.

17        And prior to doing so, Your Honor, do you want him to

18   enter his plea of guilty?

19        THE COURT:  No, we will go through the factual basis

20   first.

21        MR. DECKENBACH:  Understood, Your Honor.

22        Mr. Brochu, I'm going to ask you a series of questions

23   regarding what makes you guilty of this offense, okay?

24        THE DEFENDANT:  Okay.

25        MR. DECKENBACH:  Is it true that on or about October

Docket 21-CR-010-F                                          26

1   29th of 2020, you were in the District of Wyoming, that is, in

2   the state of Wyoming?

3            THE DEFENDANT:  Yes.

4            MR. DECKENBACH:  And on that date were you on

5   probation for a felony offense in the state of Wyoming?

6            THE DEFENDANT:  Yes.

7            MR. DECKENBACH:  In fact, you were, I think, convicted

8   of a nonviolent drug offense of possession; is that correct?

9            THE DEFENDANT:  From my probation officer or -- oh.

10           MR. DECKENBACH:  Your original felony was for

11  possession, correct?

12           THE DEFENDANT:  Yes.

13           MR. DECKENBACH:  And you understood that to be a

14  felony sentence when you received it in the state of Wyoming?

15           THE DEFENDANT:  Yes.

16           MR. DECKENBACH:  And knowing that you were a felon on

17  that day, did you possess a firearm?

18           THE DEFENDANT:  Yes.

19           MR. DECKENBACH:  Was that firearm a pistol bearing the

20  serial number TO620-15D0541?

21           THE DEFENDANT:  I'm assuming yes.  I don't have the

22  number memorized.

23           MR. DECKENBACH:  But a T subpistol?

24           THE DEFENDANT:  Yes.

25           MR. DECKENBACH:  And the entire time you possessed

Docket 21-CR-010-F                                              27

1    that firearm, you were in the state of Wyoming, correct?

2              THE DEFENDANT:  Yes.

3              MR. DECKENBACH:  Okay.  But having talked with me, you

4    understand that that pistol was manufactured outside the state

5    of Wyoming; is that correct?

6              THE DEFENDANT:  Yes.

7              MR. DECKENBACH:  And that, therefore, at some point it

8    moved from one state to another to get to Wyoming, correct?

9              THE DEFENDANT:  Yes.

10             MR. DECKENBACH:  I'd offer that as a factual basis,

11   Your Honor.

12             THE COURT:  All right.

13             Mr. Coppom, supplementation?

14             MR. COPPOM:  No, Your Honor.  The Government is

15   satisfied with that factual basis.

16             THE COURT:  All right.

17             Mr. Brochu, I'm reaching the point where I will ask

18   you how you plead.  Do you -- do you want to break out and

19   speak to your attorney for any reason, or would you like me to

20   go ahead and proceed?

21             THE DEFENDANT:  You can proceed, Your Honor.

22             THE COURT:  Can everyone hear me all right now?

23             I was saying that, for the record, I recognize that

24   the defendant's plea is conditional as a term of his plea

25   agreement, but I will ask him how he pleads to the charge.

1          With the understanding that this is a plea which is

2    conditional under the terms of your plea agreement, Mr. Brochu,

3    as to the sole count in the indictment in Docket 20-CR-10 which

4    accuses you of felon in possession of a firearm, how do you now

5    plead to that count, guilty or not guilty?

6          THE DEFENDANT:  Guilty, Your Honor.

7          THE COURT:  It is the finding of the Court in the case

8    of United States of America versus Brochu that the defendant is

9    fully competent and capable of entering an informed plea, that

10   he is aware of the nature of the charge brought against him and

11   the consequences of a plea of guilty, and that his plea of

12   guilty is a knowing and voluntary plea, supported by an

13   independent basis in fact, sufficient to satisfy all the

14   essential elements of the offense.  And the defendant is now

15   adjudged guilty of this offense.

16         I'd like to set sentencing for May 25th at 9:00.

17         Mr. Brochu, between now and May 25th, a presentence

18   investigation will be undertaken by an officer of the court.

19   You might have seen Kenny Ainsworth's image earlier in the

20   course.  There he is.  He's back with us -- I think to save

21   bandwidth, he turned his video camera off.  He may have some

22   questions for you or some forms for you to complete.  You do

23   have the right to have your attorney present for questioning by

24   the probation officer.

25         Now, Kenny's questions will probe into a wide range of

1   topics, including your background and upbringing, your

2   educational history, work history, marital status, whether you

3   have any dependents.

4          He will look into the nature of the offense conduct

5   and your past criminal convictions for guideline calculation

6   purposes.  He'll also be inquiring concerning issues with

7   mental health, physical health or substance use or abuse.

8          After the investigation is completed, a draft report

9   is written.  That report is sent to the attorneys, so you and

10  your attorney will be reading that report and talking about it.

11  Please bring to your attorney's attention any concerns you have

12  factually or legally with the report.  He can file objections

13  and seek factual corrections or lodge legal objections.  The

14  Government can as well.

15         After the window has closed to receive comments on the

16  draft report, a final report is developed that responds to any

17  objections or issues raised by the parties.

18         That final report is sent to me and the attorneys, and

19  before sentencing, you and your attorney will, again, read and

20  discuss the report, see how your issues were addressed by the

21  probation officer.  You will see the guideline calculation in

22  the draft and final report and have a sense of where you fall

23  and what you might want to argue for a reasonable disposition

24  or, basically, a reasonable sentence in this case.

25         So that brings us up to sentencing.  Hopefully, knock

1   on wood, by May we can all be together in the courtroom so that

2   your family and friends, if they want to join, can be there.

3   If it is still difficult for them to get down to Cheyenne and

4   actually be in the courtroom, they can write letters.  Often I

5   get letters from supporters talking to me about the history and

6   characteristics of the defendant, and those can be informative.

7   So that's an option as well.  So if we can get together in open

8   court, we will do everything we can to have you there.

9            My first job at sentencing is to on the record

10  finalize the report.  That Presentence Report is called a final

11  report, but it really isn't final until I put my stamp of

12  approval on it in open court.  There may be issues that I still

13  need to resolve or observations that I have to address.  I can

14  correct facts and do those matters on the record in court.

15           After those things are hammered out, I put the

16  guideline calculation on the record so I have to make the

17  decision about the guideline calculation.  It isn't just what's

18  in the report, often.

19           So I put that on the record, and I announce the

20  sentencing range that guideline supports.

21           Then I turn the matter over to the attorneys for their

22  arguments about what a fair and reasonable sentence should be

23  in the case.  Your attorney will speak first.  Then I turn to

24  the Government for the Government's arguments on the sentence.

25  If family and friends want to make a statement, that's -- after

1   I hear from the Government, that's usually when I call them

2   forward.  They're not --

3          Can everyone hear me now?  I think -- I don't have

4   Scotts Bluff still on video.

5          COURTROOM DEPUTY:  Judge, this is Abby and I can see

6   Mr. Brochu still.  It appears that you're the only one that is

7   freezing right now.

8          THE COURT:  I think it is all my -- Mr. Brochu, can

9   you see me?

10          THE DEFENDANT:  Uhm, off and on, Your Honor.  It's a

11   little glitchy, but I can hear you okay.

12          THE COURT:  Well, hopefully we -- hopefully we have

13   everybody back and we can get through this last push.

14          After I call family and friends forward, I will ask if

15   your attorney has anything more to say.  Then I will ask you if

16   you have a statement.  You have the right to make a mitigating

17   statement to me.  It is called that because people want to

18   argue for leniency or advance mitigating circumstances that

19   warrant leniency in sentencing.

20          But it is really whatever you want to say to me at

21   sentencing.  That's what I want to hear.

22          I encourage you to talk to your attorney about whether

23   you should make a statement and, if so, what you want to say.

24   Some people don't have anything to say, and that's perfectly

25   fine too.  Others have a lot.  Some people write to me, and

1  that's fine.  Some people read their statement.  We have had

2  every version known to man, I think.

3          So after I hear from you, I'll make my decision and

4  enter the decision on the record.  That, then, is reduced to a

5  writing referred to as a judgment.  It is that judgment from

6  which your attorney would appeal to the Tenth Circuit to

7  preserve your right on the conditional plea as well as anything

8  else you want to address.

9          Is there anything, Mr. Brochu, that you want me to

10  repeat, that my Internet interfered with?

11          THE DEFENDANT:  Not at this time.

12          THE COURT:  Do you have any questions for me about

13  either the presentence report or the investigation or the

14  sentencing process that I provided an overview of?

15          THE DEFENDANT:  Nope.  I'm good.

16          THE COURT:  All right.  Is there anything else that

17  might benefit the case before we conclude the plea proceeding?

18          For the Government?

19          MR. COPPOM:  No, Your Honor.

20          THE COURT:  For the defendant?

21          MR. DECKENBACH:  No.  Thank you, Your Honor.

22          THE COURT:  All right.  Well, Mr. Brochu, I wish you

23  well.  Stay healthy.  Hopefully you've got or will be getting

24  your shots there in Scotts Bluff, and we will see you in open

25  court -- do our best efforts to get you here for sentencing in

Docket 21-CR-010-F                                                    33

1   May.   Take care.

2           THE DEFENDANT:   Thank you, Your Honor.

3           THE COURT:   All right, everybody.

4       (Proceedings concluded 9:43 a.m., March 16, 2021.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T E

2

3

4

5          I, JANET DAVIS, Federal Official Court Reporter for

6    the United States District Court for the District of Wyoming, a

7    Registered Diplomate Reporter, Federal Certified Realtime

8    Reporter, and Certified Realtime Reporter, do hereby certify

9    that I reported by machine shorthand the foregoing proceedings

10   contained herein on the aforementioned subject on the date

11   herein set forth, and that the foregoing pages constitute a

12   full, true and correct transcript.

13

14          Dated this 6th day of July, 2021.

15

16

17

18          /s/ *Janet Davis*

19          _____

20              *JANET DAVIS, RDR, FCRR, CRR*
                *Federal Official Court Reporter*

21

22

23

24

25