1     IN THE UNITED STATES DISTRICT COURT

2      FOR THE DISTRICT OF WYOMING

3 ────────────────────────────────────────────────────

4 UNITED STATES OF AMERICA,   DOCKET NO. 21-CR-010-F

5    Plaintiff,

6    vs.
            Cheyenne, Wyoming
7 ANTHONY JEFFREY BROCHU,   May 20, 2021
            10:03 a.m.
8    Defendant.

9

10 ────────────────────────────────────────────────────

     TRANSCRIPT OF SENTENCING PROCEEDINGS
11
    BEFORE THE HONORABLE NANCY D. FREUDENTHAL
12     UNITED STATES DISTRICT JUDGE

13 APPEARANCES BY ZOOM:

14 For the Plaintiff:   JONATHAN C. COPPOM
         Assistant United States Attorney
15         District of Wyoming
         2120 Capitol Avenue, Fourth Floor
16         Cheyenne, WY  82001

17 For the Defendant:   JORDAN DECKENBACH
         Office of the Federal Public Defender
18         District of Wyoming
         111 South Wolcott
19         Casper, WY  82601

20

21

      *JANET DAVIS, RDR, FCRR, CRR*
22      *Federal Official Court Reporter.*
   *2120 Capitol Avenue, Room 2226, Cheyenne, WY  82001*
23    *307.314.2356 * jbd.davis@gmail.com*

24

 *Proceedings reported by stenotype reporter; transcript produced*
25 *with Computer-Aided Transcription.*

1                           I N D E X

2

OBJECTIONS TO PRESENTENCE REPORT                          PAGE

3
        Mr. Deckenbach                                      3
4       Mr. Coppom                                          3
        Guideline Calculations                             4
5       Ruling                                              4

6

7   MOTIONS                                                PAGE

8
        Motion for Departure - Mr. Deckenbach              5
9       Mr. Coppom                                          6
        Ruling                                              6
10      Motion for Variance - Mr. Deckenbach               8
        Mr. Coppom                                          9
11
    JUDGMENT AND SENTENCE                                  PAGE
12
        Allocution                                         14
13      Judgment & Sentence                                15

14

15

16

17

18

19

20

21

22

23

24

25

Docket 21-CR-010-F     OBJECTIONS TO PSR                          3

1            (Proceedings commenced 10:03 a.m., May 20, 2021.)

2                 THE COURT:  Please be seated.

3                 COURTROOM DEPUTY:  In criminal matter

4    Case No. 21-CR-10-F.

5                 MR. COPPOM:  Good morning, Your Honor, Jonathan Coppom

6    for the United States.

7                 MR. DECKENBACH:  And good morning, Your Honor.  Jordan

8    Deckenbach appearing on behalf of Mr. Anthony Brochu who

9    appears before the Court in custody.

10                THE COURT:  Good morning.  Counsel, please approach.

11                          * * * * * * * * * *

12           (Proceedings at sidebar not transcribed.)

13                          * * * * * * * * * *

14                THE COURT:  Mr. Deckenbach, have you and your client

15   read and discussed the revised Presentence Report?

16                MR. DECKENBACH:  We have, Your Honor.

17                THE COURT:  Are there any factual issues concerning

18   the report?

19                MR. DECKENBACH:  No, Your Honor.

20                THE COURT:  Anything from the Government?

21                MR. COPPOM:  No, Your Honor.

22                THE COURT:  Other than motions for departure or

23   variance, are there legal issues relating to the guideline

24   calculation?

25                MR. DECKENBACH:  No, Your Honor.

*Janet Davis, RDR, FCRR, CRR*                    *jbd.davis@gmail.com*

1          THE COURT:  For the Government?

2          MR. COPPOM:  No, Your Honor.

3          THE COURT:  All right.  I'll put the guideline

4    calculation on the record.  It begins at page 7 of the PSR.

5    We're here for sentencing for felon in possession which begins

6    at a base offense level of 14.  The defendant receives a

7    two-level reduction for his timely acceptance of

8    responsibility, dropping him to a total offense level of 12.

9          In terms of countable criminal convictions, his first

10   countable conviction is a 2011 retail theft, criminal mischief

11   conviction.  Then we have a 2011 possession of drug

12   paraphernalia and possession of marijuana conviction.  Both of

13   those convictions each accrue one point.

14         We have a 2018 third offense possession of a

15   controlled substance felony.  That accrues one point.  He has a

16   subtotal criminal history score of 3.  However, he was under a

17   criminal justice sentence out of state court when the current

18   offense conduct was committed.  That adds an additional two

19   points.

20         With a criminal history score of 5, he's placed in

21   Criminal History Category III.  At offense level 12, Criminal

22   History Category III, the guideline range is 15 to 21 months.

23         Any objections or corrections to the guidelines as

24   they stand before motions for departure or variance?  Mr.

25   Deckenbach?

1          MR. DECKENBACH:  No, Your Honor.

2          THE COURT:  For the Government?

3          MR. COPPOM:  No, Your Honor.

4          THE COURT:  All right.

5          Those, then, will be the Court's initial conclusions.

6          We do have a sentencing memo in this case on behalf of

7   defendant which raises, among other arguments, as I understand

8   it, a motion for departure for overrepresentation.

9          Are there other departure arguments that I may have

10  missed in the memo?

11         MR. DECKENBACH:  Not for departure, Your Honor.

12         THE COURT:  All right.  I've read the memo, but you're

13  certainly welcome to hit the high points or argue the

14  overrepresentation.

15         MR. DECKENBACH:  Thank you, Your Honor.  If not a

16  departure, I think the arguments laid out in the memo certainly

17  support a downward variance.  As outlined in the memo,

18  Mr. Brochu's very limited criminal history all really stem from

19  his mental health issues and his attempts to medicate that

20  illicitly.  And the two 2011 convictions are quite old and

21  there's not a lot of intervening criminal conduct in between

22  those and the 2018 conviction which, itself, was a mental

23  health crisis situation which law enforcement responded to.

24         So we ask that you find grounds for departure to a

25  time-served sentence, and if not a departure, at least consider

1    that argument in support of the variance.

2         THE COURT:  All right.  And we will hear further

3    arguments on the variance from the Government on the departure

4    argument.

5         Mr. Coppom.

6         MR. COPPOM:  Your Honor, I'll just let the Court know

7    at this time I was unable to access the sentencing memorandum

8    filed by Mr. Deckenbach.  That's fine, and I'll waive any need

9    to see it.

10        Regarding an argument that Mr. Brochu's criminal

11   history is overrepresented, Your Honor, I don't think that's

12   borne out by the facts in this case.  The guidelines are very

13   specific about how they are applied and what sorts of

14   convictions are countable versus not countable.

15        One of the sentencing factors ultimately is sentencing

16   disparities, whether defendants are being treated the same

17   across the board.  And because these convictions were countable

18   convictions, I would just respectfully argue that Mr. Brochu

19   should have them counted like any other defendant in front of

20   this Court.  Thank you, Your Honor.

21        THE COURT:  All right.  Thank you.

22        Well, I have read the sentencing statement.  Much of

23   the thrust of the statement I think is perhaps more properly

24   characterized as a motion for variance.  From my perspective in

25   looking at -- in considering a defendant and his criminal

1  history, even though the earlier convictions are older

2  convictions, they are countable.  There's nothing about those

3  convictions that strikes the Court as not representative of the

4  defendant's criminality, and I think the same about the

5  conviction in 2018 and the probation violation associated with

6  that conviction.

7          While defendant's circumstances were or appear to have

8  been considered by the sentencing court in that case, it was a

9  felony case and he failed on supervision associated with that

10  felony case for reasons unrelated or additional reasons beyond

11  the commission of a new offense.

12          It appears to me as though each of the points

13  properly -- is properly counted, as there are no objections to

14  the countable score, and defendant seems well-placed in

15  Criminal History Category III.  This isn't an instance where he

16  is teetering on the edge between II and III, and I do think

17  category III best represents his potential for recidivism and

18  criminal thinking.

19          Consequently, I will deny the motion for departure and

20  we will move to the motion for variance.  I know a portion of

21  your argument touched on the arguments associated with his

22  circumstances, his mental health history, his substance abuse

23  and use, the mental health crises that have resulted in his

24  encounters with law enforcement.

25          I do have the letters and have read the letters from

1   family and friends, but I certainly would welcome additional

2   arguments on the motion for variance.

3          MR. DECKENBACH:  Thank you, Your Honor.  As the Court

4   has reviewed that, I won't go on too long here.  But the

5   guidelines are advisory.  They are there to make sure that

6   defendants are treated equally.  However, the law asks the

7   Court, as the Court is well aware, to consider the individual

8   defendant's history and characteristics and the public policy

9   interest in defendants, deterring future criminal activity as

10  well as keeping the public safe.

11         And with Mr. Brochu, a sentence of time served today

12  is going to answer all of those considerations.  Sending him to

13  BOP and federal prison is not going to deter him.  He

14  understands how he is not to have a firearm under any

15  circumstances.  His lesson has been learned, sitting almost

16  seven months in custody, 204 days as of today.  Going to the

17  BOP is not going to help him, his mental health.  It is not

18  going to help him address his addictions.

19         Truly, what is going to help him is continued

20  counseling which can resume starting tomorrow if the Court is

21  to give him a time served.  He has a home that he can move into

22  tomorrow with his mother, you know.  He turned 40 two days ago.

23  And as someone who is quickly approaching his 40th birthday,

24  the point -- kind of the halfway point where you kind of look

25  forward, look back and see what you've accomplished, what you

1    have failed to accomplish, and it is a time to reflect and look

2    forward.  And Mr. Brochu is doing that.  He's looking forward

3    to a life where he can continue to work with professionals in

4    curbing his addiction and pursuing appropriate medication for

5    his mental health issues and he can work and provide for

6    himself as well as his loved ones.

7         So that's the opportunity you would be affording him

8    immediately by giving him time served.  He is not a threat to

9    the public.  There's going to be no danger by giving him such a

10   sentence.  He is not a threat to anyone, Your Honor.  And his

11   interests, as well as the public interest, would be best served

12   with a sentence of time served.

13        THE COURT:  All right.  Thank you.

14        For the Government.

15        MR. COPPOM:  Thank you, Your Honor.  At the outset

16   I'll, I guess, make a small confession which is I struggle

17   personally sometimes with some of the crimes we charge, like

18   felon in possession, because it is hard to really know how

19   culpable someone is.  Mr. Brochu has certainly violated a law

20   that Congress felt important to enact to keep firearms out of

21   the hands of felons, but even within that crime we do see a

22   spectrum in terms of how people behave when they're perhaps

23   violating the law.

24        Some are more egregious than others.  Mr. Brochu, he

25   has, it appears, some substance abuse issues and some mental

1   health issues.  That is something this Court needs to take into

2   account.

3            At the same time I will also note, Your Honor, that's

4   true of a lot of defendants who, obviously, come before this

5   Court.  This Court knows that well more than me.

6            But at the end of the day, Mr. Brochu's conduct -- he

7   had a firearm, and he was in a public space with it.  He did

8   not resist arrest or anything like that, so he did violate the

9   law, and he should be held accountable in some way.

10            I will also be candid, Your Honor.  I'm frequently

11   relieved that I don't have to decide the exact sentence someone

12   receives, so everything Mr. Deckenbach said should be taken

13   under consideration.  I don't have anything to add to it.

14            Under the terms of the plea agreement, Your Honor, I

15   am bound to recommend the low end of the guidelines in this

16   case, so that's what I will do.  I would respectfully ask that

17   the Court sentence Mr. Brochu to 15 months which is the low end

18   of the guidelines.  Not knowing what is a perfect sentence,

19   because that's impossible to ever know, that is a sentence that

20   is sufficient, but not greater than necessary, under the

21   factors in Section 3553(a).  Thank you, Your Honor.

22            THE COURT:  All right.  Thank you.

23            Anything further from counsel?

24            As is my practice, I summarize the letters that I've

25   received and read.

1          Counsel, anything further before I go through that

2     summarization?

3          MR. DECKENBACH:  No, Your Honor.  Thank you.

4          THE COURT:  All right.  Thank you.

5          As noted with the sentencing statement from counsel, I

6     received several letters on defendant's behalf.  I received a

7     letter from his mother, Ms. Brochu.  She writes that the

8     defendant is her oldest son.  She characterizes him as a

9     peacekeeper, someone who goes out of his way to help anyone in

10    need, kind and considerate, someone that she's proud of.  She

11    writes about the tragedy where defendant lost his wife, and she

12    also writes about some concerns regarding reports and the

13    negative information the officer reports have.

14         She wants me to know that the family is a good

15    Christian family, that the defendant is honest.  She does not

16    believe he will be a repeat offender.  She believes last year

17    was very difficult on the defendant.  She doesn't have kind

18    words to say about his wife, although I'm sure it was tragic as

19    well to her that the -- the circumstances of her death.

20         She is also sympathetic about his former wife's

21    disability and the pain.  She writes that the defendant comes

22    from a supportive family.  She looks forward to having him come

23    and stay with her in Powell.  She notes he's a careful and --

24    caring and helpful person and that it would be a blessing to

25    her to have him close again.

1          She believes that he's paid for his wrongs, that he's

2    lost so much:  His wife, his job, his apartment and many of his

3    belongings.  She characterizes him in closing as a good, gentle

4    man.

5          Then I have a letter from Mr. Brochu, defendant's

6    father.  As I understand it from Mr. Brochu's letter, he

7    adopted the defendant and they bonded.  He characterizes the

8    defendant as someone quick to offer a comforting word or

9    helping hand.  I found it curious that he characterized the

10   defendant as an average student, fair, and curious that he

11   numbered his paragraphs.  I think that may be associated with

12   his military service.

13         He writes defendant had a lot of friends as a child.

14   He, too, remarks that theirs is a Christian family and he

15   characterizes the defendant as a decent, Christian man,

16   although I -- just on a note, not that this is negative in any

17   respect, but I found it curious that the defendant identified

18   his religion as "Other," and perhaps it just didn't come up and

19   that's what the mental health counselor noted, not knowing

20   exactly what to say.

21         He believes that the defendant is tuned into other

22   people's feelings.  He acknowledged that the defendant has made

23   bad decisions, but he doesn't believe that he deserves any

24   sentence other than a time-served sentence.  He believes the

25   defendant wasn't in his right mind during this time, perhaps

felt threatened by the world.  But overall he characterizes him

as an open, caring man with a huge heart, not a threat to

anyone, any person, and hasn't shown violence towards anyone.

I have a letter from Ashton Munoz, the defendant's

brother.  He characterizes defendant similarly, as someone kind

and trustworthy, someone who has gone through difficult

experiences.  He believes the defendant had a momentary lapse

in judgment.  He writes that the defendant will be released

ultimately to live with his mother in Powell who will provide a

stable and loving environment and help the defendant acquire

suitable employment and that the defendant will help in

providing family support and emotional stability.

I have a letter from Patrick Brochu, another brother,

who characterizes the defendant as very caring and humble,

willing to help and patient.  This brother believes that he

faces -- that this charge is for violating the terms of his

probation and, of course, we all know it is not.  This is a

separate offense.  Nonetheless, the brother writes about the

loss the defendant suffered which he believes perhaps

contributed to him not thinking clearly.  He writes that he's

kind and caring.

He, too, notes that the defendant will be staying with

his mother who will offer a stable environment and help find

employment and writes that he's missed very much.

And then I have a summary, as noted, that offers some

1    observations concerning defendant's drug, employment,

2    psychiatric challenges that are part of his life.

3           And then I do have the state supervising conditions

4    and then a Behavioral Health Center report, and that report

5    indicates that during that time in 2020, the view was that

6    defendant had made significant progress towards achieving his

7    goal.  I think at that time perhaps it was to reduce anxiety,

8    perhaps other areas as well.

9           Just so I haven't missed any letters, are those the

10   letters that you're aware of?

11          MR. DECKENBACH:  Yes, Your Honor.

12          THE COURT:  All right.  Anything further before I ask

13   your client if he has a statement?

14          MR. DECKENBACH:  No, Your Honor.  Thank you.

15          THE COURT:  Mr. Brochu, is there anything that you

16   wish to say, sir?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  If you could come forward.  The court

19   reporter can take down your comments, but you will need to

20   speak into the microphone.  Thank you.  She's connected to the

21   microphone for her translation service.

22          THE DEFENDANT:  Just, Your Honor, that I am a

23   God-fearing man.  I am a firm believer in justice in our

24   system, and I know that it is -- justice will be found and that

25   the -- the letters pretty much do summarize -- summarize it up.

1    And I hope that you take it all into consideration when justice

2    is served today.  And I appreciate your time, Your Honor.

3           THE COURT:  Thank you, sir.

4           THE DEFENDANT:  Thank you.

5           THE COURT:  And just to note, unless I'm mistaken, I

6    believe defendant is here on a conditional plea.  Is that

7    correct?

8           MR. DECKENBACH:  That's correct, Your Honor.

9           THE COURT:  All right.  Well, this case presents some

10   challenges.  Notwithstanding the conditions of supervision, I

11   have a difficult time in this day and age understanding how

12   someone adjudged a felon can believe he can have a gun and

13   possess a gun, notwithstanding state law.  There's so much in

14   the news these days about additional restraints needed or not

15   needed associated with gun possession and the amount of guns we

16   have in our society.  The one constant in all the discussions,

17   and unless or until the courts advise otherwise, is that felons

18   can't possess guns, just like felons can't vote; felons can't

19   run for office; felons are deported if they come from another

20   country.  And these are -- this is the law of the land.

21          I certainly do understand and appreciate that the

22   defendant has some -- has had some real significant challenges

23   during this period, but even in Park County where I'm from,

24   gun-loving people seem to still understand that they cannot

25   carry guns and possess guns if they're felons.  So that -- that

1   is notwithstanding the prosecutor's statements.  And we do have

2   reductions for certain types of gun offenses associated with

3   the guideline calculation to reflect that, that not all

4   possessions by felons is the same.

5          But this, we have someone who has obvious mental

6   issues, in a country where we have gun violence on a day-by-day

7   basis, that also has substance abuse issues.  And none of that

8   supports -- in addition to being a felon, none of that supports

9   or counsels having a gun in your waistband.  That to me is just

10  un -- un -- you know, it is difficult for me to comprehend how

11  someone can go into a store or any public space, or even in his

12  home, with mental health challenges, substance abuse issues,

13  and a felony, on top of all of that to have a gun, particularly

14  with the backdrop of the last offense which was so very

15  dangerous to yourself and law enforcement.

16         While I expect the family's kind of whitewash of the

17  circumstance and characterizes -- in terms of characterizing

18  the defendant as not violent, he's obviously a violent person

19  vis-à-vis himself, if not others.  And that encounter says it

20  all.

21         Honestly, I have to wonder, had the state court judge

22  imposed a harsher sentence would it not have made a better

23  impression or a more significant impression.  It was, like, you

24  pled guilty to that felony and left with very little time, on

25  four years' probation, and just picked up where you were at

1    that point in time.  And that, to me, makes no sense either.

2    Something should have changed in that -- in your thinking, that

3    you were not on the right path, when you found your wife's gun,

4    that you should not have it.  Even having not been adjudged a

5    felon, someone with mental health and substance abuse problems

6    should not be carrying a gun.

7            I know that's not the law of the land, and I'm not in

8    the legislature, but that's a strongly held view.  We are not

9    here to punish that conduct, but we are here to punish felon in

10   possession.  So I'm here from the perspective that we have

11   somebody who is a danger and a risk.  While a prison sentence

12   may not advance your mental health treatment or substance abuse

13   challenges, it deters future criminal conduct and it protects

14   the public and it protects yourself.

15           And I won't follow in the footsteps of the state court

16   judge and be lenient, particularly with a time-served sentence.

17   There's just nothing here -- there's nothing here that supports

18   that.  Granted, you come from a very supportive, Christian

19   family, and that is your ace in the hole.  That is your

20   strength.  That is where you need to come back to.  You need to

21   comply with your conditions of probation.  You were given a

22   break and violated your conditions of probation.

23           So, that's a long way of saying that this is not going

24   to be a time-served sentence.  It is not going to be a low-end

25   sentence because I think the punishment here needs to fit the

1   history and characteristics of the defendant as he presents

2   himself, which is a person with significant onboard challenges

3   of mental health and substance use.  And those, combined with

4   not fully appreciating the circumstances of that -- of your

5   situation and then turns to possessing a gun when you could

6   have easily killed the officer in that 2018 encounter, or

7   yourself or everybody, it's just -- this picture is one that

8   just does not call out for leniency.

9           So with that, I will impose a mid-range sentence and a

10  three-year term of supervision to follow.  I recognize this is

11  a conditional plea, and I'll advise on a Notice of Appeal so

12  that you can preserve the arguments that were made in the

13  motion to dismiss.

14          So with that, I will state disposition.

15          Pursuant to the Sentencing Reform Act of 1984, and

16  considering those factors set forth in 18 USC Section 3553(a),

17  it is the Judgment and Sentence of the Court that the defendant

18  Anthony Jeffrey Brochu is hereby sentenced to a term of 18

19  months in the custody of the Bureau of Prisons.

20          Upon release from custody, the defendant shall be

21  placed on supervised release for three years.

22          Within 72 hours of release from custody, the defendant

23  shall report in person to the probation office in the district

24  to which he's released.

25          While on supervised release, the defendant shall

1  comply with the mandatory and standard conditions of

2  supervision adopted by this court.

3  Further, in accordance with the factors set forth in

4  18 USC Section 3553(a), additional special conditions detailed

5  in paragraph 66 of the Presentence Report will be imposed in

6  order to address the nature and circumstances of the instant

7  offense and the defendant's documented history of substance

8  use, mental health problems and criminal history.

9  A search condition will be imposed in order to promote

10  public safety through effective oversight and to enforce the

11  other conditions of supervision and to achieve the desired

12  outcomes of supervision.

13  In accordance with 18 USC Section 3583(d), I find

14  these conditions are reasonably related to the deterrence of

15  criminal conduct, the protection of the public from further

16  crimes of the defendant and defendant's educational,

17  vocational, medical and other correctional needs.

18  Further, they involve no greater deprivation of

19  liberty than is reasonably necessary for the purposes of

20  deterring criminal activity, protecting the public and

21  promoting the defendant's rehabilitation and are consistent

22  with any pertinent policy statement issued by the Sentencing

23  Commission.

24  I find the defendant does not have the ability to pay

25  a fine, and no fine is ordered.  It is ordered that the

1  defendant shall pay a special assessment fee in the amount of

2  $100 which is due immediately.  Payments for monetary

3  obligations shall be made payable by cashier's check or money

4  order to the Clerk of the District Court, 2120 Capitol Avenue,

5  Cheyenne, Wyoming, 82001.

6      The defendant shall participate in the Inmate

7  Financial Responsibility Program to pay his monetary

8  obligations by making payments of no less than $25 per quarter.

9      Any amount not paid immediately or through the BOP

10 program shall be paid commencing 60 days prior to the

11 expiration of the defendant's term of supervised release --

12 excuse me -- shall be paid commencing 60 days after the

13 defendant's release from confinement in monthly payments of not

14 less than 10 percent of the defendant's gross monthly income.

15 All payments shall be satisfied no later than 60 days prior to

16 the expiration of the term of supervision.

17     I recommend the defendant be placed at FCI Englewood

18 for the programming and proximity to family members, and I

19 strongly recommend that he participate in the Residential Drug

20 Abuse Program.  However, the length of sentence will really

21 facilitate that.  I can include that recommendation and

22 hopefully that will go towards other drug abuse or drug

23 prevention programs administered by the BOP.

24     The defendant is advised that he has 14 days from the

25 date of entry of judgment to file any Notice of Appeal.

Docket 21-CR-010-F    JUDGMENT & SENTENCE                     21

1         Other than reasons previously argued, is there any

2   reason why the sentence should not be imposed as stated?

3   Counsel for defendant?

4         MR. DECKENBACH:  No further basis, Your Honor.

5         THE COURT:  All right.

6         For the Government?

7         MR. COPPOM:  No, Your Honor.

8         THE COURT:  All right.  I will impose judgment as

9   stated.

10        Good luck to you, Mr. Brochu.

11        We will stand in recess until 11:00.

12      (Proceedings concluded 10:39 a.m., May 20, 2021.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        C E R T I F I C A T E

2

3

4

5            I, JANET DAVIS, Federal Official Court Reporter for

6    the United States District Court for the District of Wyoming, a

7    Registered Diplomate Reporter, Federal Certified Realtime

8    Reporter, and Certified Realtime Reporter, do hereby certify

9    that I reported by machine shorthand the foregoing proceedings

10   contained herein on the aforementioned subject on the date

11   herein set forth, and that the foregoing pages constitute a

12   full, true and correct transcript.

13

14           Dated this 6th day of July, 2021.

15

16

17

18                   /s/ *Janet Davis*

19                   _____

20                   JANET DAVIS, RDR, FCRR, CRR
                     Federal Official Court Reporter

21

22

23

24

25